UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES CRAVEN,                          Case No. 10-14245

            Plaintiff,             Avern Cohn
vs.                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,         Michael Hluchaniuk
                                         United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 18)**

## I.  PROCEDURAL HISTORY

    A.  <u>Proceedings in this Court</u>

On October 22, 2010, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Avern Cohn referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 18).

    B.  <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on January 30, 2008, alleging that he

became unable to work on December 31, 2004.  (Dkt. 5-5, Pg ID 134).  The claim

was initially disapproved by the Commissioner on May 6, 2008.  (Dkt. 5-4, Pg ID

86-89).  Plaintiff requested a hearing and on January 16, 2009, plaintiff appeared

with counsel before Administrative Law Judge (ALJ) Robert Milton Erickson,

who considered the case *de novo*.  In a decision dated February 17, 2010, the ALJ

found that plaintiff was not disabled.  (Dkt. 5-3, Pg ID 64-76).  Plaintiff requested

a review of this decision on April 12, 2010.  (Dkt. 5-2, Pg ID 24).  The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits[1] (Dkt. 5-2, Pg ID 21-22), the Appeals Council, on August 25,

2010, denied plaintiff's request for review.  (Dkt. 5-2, Pg ID 18-20).

 For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

 [1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 28 years of age at the time of the most recent administrative hearing.  (Dkt. 5-5, Pg ID 130).  Plaintiff's relevant work history included approximately 3 years as a bus boy, cook, laborer, maintenance worker, porter, salesperson, stock picker, and a stocker.  (Dkt. 5-6, Pg ID 175).  In denying plaintiff's claims, defendant Commissioner considered seronegative spondyloarthropathy (SNSA), schizoaffective disorder, bi-polar type with psychotic features as possible bases of disability.  (Dkt. 5-6, Pg ID 174).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since December 31, 2004.  (Dkt. 5-3, Pg ID 69).  At step two, the ALJ found that plaintiff's substance abuse; schizophrenia; and Attention Deficit Hyperactivity Disorder (ADHD) were "severe" within the meaning of the second sequential step. *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 5-3, Pg ID 70).  At step four, the ALJ found that plaintiff could  perform his previous work as a porter.  (Dkt. 5-3, Pg ID 74).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 5-3, Pg ID 76).

Report and Recommendation
Cross-Motions for Summary Judgment
*Craven v. Comm'r*; Case No. 10-14245

B.     Plaintiff's Claims of Error

Plaintiff first argues that the ALJ failed to take into consideration the statement by plaintiff's mother regarding his multiple nonexertional limitations, such as his inability to do things around the house without reminders, his difficulty getting along with supervisors and coworkers, his becoming belligerent and difficult under stress, and his missing portions of instructions.  (Tr. 163-70). Plaintiff also points to the evidence in the record showing over a period of several months in 2007 and early 2008 that plaintiff was unable to sustain competitive employment.

Plaintiff also asserts that the ALJ erred by including plaintiff's attendance at school as a factor in finding that he could work in competitive employment. Specifically, the ALJ stated that attending classes included interaction with other students and teachers.  According to plaintiff, this is an unwarranted assumption and "[a]nyone who has ever attended a college class realizes that it is perfectly possible to attend class without engaging with other students or the instructor, especially in a computer-environment class."

Plaintiff also argues that the ALJ erred by adopting the opinion of the doctor at the State Agency merely for the reason that his "opinions are consistent with the record."  Plaintiff complains that the ALJ adopted Dr. Tripp's opinion that Mr. Craven could do simple, unskilled jobs with the limitation to simple repetitive

tasks even though Dr. Tripp is "not a vocational expert."  Plaintiff also believes

Dr. Tripp's opinion should have been given less weight because he stated, "[th]e

treating source is given controlling weight," when there is no opinion from a

treating source.  Most importantly, Dr. Tripp did not have the records from Hegira

from April 2008 to June 2009.  While many of these records are illegible, it is

clear, according to plaintiff, that he was not doing well.  In January of 2008 Mrs.

Craven called Hegira to report that her son had told her that he was hearing voices

and that the television was sending him messages.  Not until then had the doctor

and case manager realized that plaintiff's hallucinations had never really gone

away.  (Tr. 409).  In March 2009, the case manager reported that there was only

recent awareness that the psychosis was constant.  (Tr. 519).  He did not meet the

criteria for discharge from the program, which was originally estimated as 2008.

(Tr. 361).  Plaintiff was only released from case management about March of

2009, and that release was to therapy at Hegira-Westland Counseling Center

(HWCC).  (Tr. 506).

      Plaintiff also finds fault with the ALJ's statement, "The claimant's

statements … are not credible to the extent they are inconsistent with the

above residual functional capacity assessment."  (Tr. 54).  Plaintiff says that the

record notes his difficulties, not because he is untruthful but as a symptom of his

impairment.  Dr. Shah reported that plaintiff was a "poor historian."  (Tr. 239).  It

is "hard for him to understand schizophrenia." (Tr. 518). He is "resistant to believing he has a mental disorder." (Tr. 167). The consulting psychiatrist reported, "He minimizes his psychiatric condition." (Tr. 458). For this very reason, plaintiff argues, the report of his mother who lives with him is crucial to determining his ability to work on a regular and continuing basis.

In this vein, plaintiff also finds fault with the ALJ's hypothetical question to the vocational expert. The ALJ did not mention in the hypothetical question, the difficulties she noted. (Tr. 56). Thus, according to plaintiff, because the residual functional capacity – and the hypothetical – relied on the opinion of the non-examining, reviewing doctor in an area for which he has no expertise, it is flawed and the vocational expert's response is not substantial evidence. Further, plaintiff argues that the area in which Dr. Tripp did have expertise – determining plaintiff's moderate limitations in concentration, persistence, and pace – was not accounted for in the ALJ's residual functional capacity. (Tr. 481, 53).

C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ cited a wealth of evidence to support his determination that plaintiff had the residual functional capacity (RFC) to work so long as that work involved only simple repetitive tasks. In May 2008, James Tripp, Ed.D., completed a Psychiatric Review Technique form, indicating that plaintiff was able to do simple, sustained, unskilled tasks. (Tr. 471-84). He

also determined that none of plaintiff's mental impairments was severe enough to meet or equal a Listing, as he found that plaintiff had only mild restrictions or difficulties in activities of daily living and in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 481). The ALJ adopted Dr. Tripp's findings at step three of his decision. (Tr. 52, 55). Dr. Tripp also reviewed plaintiff's records to conduct a mental RFC assessment of plaintiff, and again determined that plaintiff could undertake simple, sustained, unskilled tasks. (Tr. 467-69). The ALJ explicitly noted that he relied on this assessment. (Tr. 56). Critically, as the ALJ noted, the record contains no subsequent medical source opinion that placed any restrictions on the kind of work or activities plaintiff could undertake. (Tr. 56).

According to the Commissioner, plaintiff's treatment records also support the ALJ's decision. Although plaintiff alleged a disability onset date of December 31, 2004 (Tr. 49), as the ALJ noted, the record does not contain any documentation of schizophrenia, paranoia, or any other psychiatric symptoms prior to February 9, 2007. (Tr. 51 citing Tr. 274-88, 458-60; Tr. 56). In fact, the ALJ noted that a review of plaintiff's treatment records conducted in February 2007 revealed that plaintiff had not received inpatient or outpatient treatment and never had undergone substance abuse treatment. (Tr. 54 citing Tr. 278, 283, 286). The ALJ also noted that plaintiff reported feeling better after Dr. Khang prescribed

medication.  (Tr. 54).  Dr. Youssef performed a consultative evaluation in April 2008, and found plaintiff's mental status was within normal limits; the doctor found plaintiff to be pleasant with logical and coherent thoughts and a full-range affect.  (Tr. 54 citing Tr. 458-60).  Dr. Youssef noted that plaintiff was not under stress and could manage his own benefit funds.  (Tr. 460).  The ALJ also cited an examination report from June 2008 that described plaintiff as calm and cooperative.  (Tr. 55, citing Tr. 547).  A progress note dated September 26, 2008 noted that plaintiff reported he was doing "all right" and that his mood swings were under better control.  (Tr. 55 citing Tr. 534, 536).  This same progress note indicated that plaintiff was taking four classes at Schoolcraft and doing well.  *Id*.  The Commissioner points out that treatment notes in 2009 showed similar progress.  That April, plaintiff reported feeling a lot better and calmer, and noted that, although his symptoms were still present, he was able to cope with them.  (Tr. 55 citing Tr. 506).  He continued his studies in school and found school helped him to function.  *Id*.  The ALJ also stressed that no treating medical source placed any limitations on plaintiff's activities.  (Tr. 56).

The ALJ also cited plaintiff's activities of daily living, including plaintiff's enrollment in college.  (Tr. 56).  As the ALJ explained, despite plaintiff's report of hearing voices, he successfully attended college full time since the fall of 2008.  (Tr. 56).  At the hearing, he testified he had learned a number of sophisticated

graphic design computer applications, including Photoshop, Adobe Illustrator, and Dreamweaver. (Tr. 20-21). The Commissioner posits that if plaintiff had the mental capacity to learn such complicated software, then he surely retained the ability to perform the range of unskilled work to which the ALJ limited him. Additionally, in 2005 and 2006 – which falls within Plaintiff's claimed disability period – plaintiff obtained a license and worked as a tattoo artist. (Tr. 25). The ALJ cited other activities that supported his decision. Plaintiff cared for a pet cat. (Tr. 24-25, 56). He had a driver's license and drove. (Tr. 26, 56). He went grocery shopping by himself. (Tr. 28). While his mother often cooked, plaintiff testified that he could and sometimes did prepare his own meals. (Tr. 27-28, 56). He used a computer at home every day and surfed the Internet. (Tr. 22-23, 56). The ALJ also cited a function report, in which plaintiff disclosed that he performed such household chores as shoveling snow, mowing the lawn, cleaning the house, and doing laundry. (Tr. 56 citing Tr. 173-80). According to the Commissioner, the ALJ properly relied on all of these activities to support his conclusion that plaintiff retained the ability to perform work that entailed simple repetitive tasks.

While plaintiff argues that the ALJ did not consider his mother's report of plaintiff's limitations, as disclosed in a function report, the Commissioner asserts that the ALJ's failure to mention any particular piece of evidence is not in itself

fatal as there is no requirement that the ALJ discuss every piece of evidence in the administrative record.  In any event, the Commissioner also points out that the ALJ did not ignore plaintiff's mother's disclosures.  Rather, he noted that much of plaintiff's mother's report supported his decision because it showed plaintiff had a good level of daily functioning.  Plaintiff notes that his mother suggested that plaintiff refused to acknowledge his mental illness, and argues that the ALJ should have explicitly considered this.  According to the Commissioner, it was hardly error for the ALJ not to do so, given that plaintiff essentially refuted his mother's statement at the hearing, where he admitted that he had a mental illness and explained that to deal with it, he tried to stay busy.  (Tr. 31, 33).

Plaintiff also argues that the ALJ made too much of his school attendance. In particular, he claims that the ALJ made an "unwarranted assumption" that plaintiff's class attendance demonstrated that he could interact with students and teachers.  The Commissioner asserts that there is no record evidence to support plaintiff's assumption that  "[a]nyone who has ever attended a college class realizes that it is perfectly possible to attend class without engaging with other students or the instructor, especially in a computer environment class."  The Commissioner maintains that the ALJ's understanding that college classes require some degree of social interaction is far more reasonable than plaintiff's unsubstantiated argument.  At any rate, the Commissioner contends that plaintiff

makes too much of this. The ALJ cited plaintiff's school enrollment largely to support his finding that plaintiff retained the ability to perform at least simple repetitive unskilled work. Plaintiff was largely successful at school, where he learned sophisticated computer applications that required a degree of skill, thought, and concentration significantly greater than that suggested by the RFC finding. Additionally, plaintiff's academic career is not the only factor that supported the ALJ's finding that plaintiff could interact with others or handle a range of unskilled tasks. Plaintiff testified to a driving under the influence conviction in 2007 and subsequent sentencing to one year of community service. (Tr. 28-29). He apparently successfully completed his sentence, for he testified at the hearing in 2009 that he still had a driver license. (Tr. 26).

According to the Commissioner, plaintiff cites no authority for his suggestion that Dr. Tripp's opinions were stale. To the contrary, the regulations counsel that an ALJ must always consider such state agency medical opinions. The Commissioner also points out that while Dr. Tripp conducted his RFC assessment in May 2008, this was well into plaintiff's alleged period of disability, given the alleged an onset date of December 31, 2004. (Tr. 49). Further, as the ALJ noted, the record contains no medical source opinion of plaintiff's functional abilities more recent than Dr. Tripp's. (Tr. 56 (since February 2007, no treating physician has placed limitations on plaintiff)). The Commissioner

suggests that plaintiff's argument is flawed given that he points to no more recent a medical source opinion, nor does he even identify an alternative medical source opinion he believes the ALJ should have accorded greater weight. In fact, plaintiff argues that the record does not contain a treating source opinion, which is the basis for his second attack against the ALJ's reliance on Dr. Tripp's opinions. While this is true, the Commissioner argues that it does not significantly undermine the validity of Dr. Tripp's conclusion that plaintiff retained the ability to perform simple, sustained, unskilled tasks because the ALJ conducted an independent review of the evidence to measure the consistency and supportability of Dr. Tripp's opinion with the record as a whole. The ALJ recounted treatment records, progress notes, and plaintiff's own activities that supported Dr. Tripp's assessment. The ALJ explicitly stated that he gave Dr. Tripp's opinions significant weight because they were consistent with the record. (Tr. 56). The Commissioner finds this attack on Dr. Tripp's opinion somewhat puzzling in light of plaintiff argument that the ALJ did not include Dr. Tripp's finding of moderate limitations in concentration, persistence, and pace in the RFC finding.

The ALJ found that plaintiff was credible only to the extent that his testimony was consistent with the ALJ's RFC finding. (Tr. 54). In what the Commissioner describes as a "brief paragraph devoid of any legal or scientific authority, plaintiff questions this finding, asserting that Plaintiff minimized the

significance of his mental illness, which itself was a symptom of it." The Commissioner points out that plaintiff fails, however, to acknowledge his own hearing testimony, where he admitted that he had a mental illness, that it affected his concentration, and that he tried to deal with it by staying busy. (Tr. 31-33). In fact, he testified that he heard voices, which impaired his concentration and prevented him from maintaining steady employment. (Tr. 31). A successful attack on the ALJ's credibility finding requires plaintiff to overcome a high burden, for courts accord such findings great deference. The Commissioner contends that the ALJ properly considered plaintiff's lack of treatment history (pre-2007) in assessing his credibility and accurately noted that once plaintiff began treatment, progress and treatment notes showed this treatment to be efficacious. For example, plaintiff reported feeling better after taking medication Dr. Khang prescribed in April 2008. (Tr. 54). Dr. Youssef performed a consultative examination that same month and found plaintiff's thoughts to be spontaneous, logical, and coherent. (Tr. 54, 458-60). Plaintiff reported feeling better in April 2009, when he was enrolled at Schoolcraft. (Tr. 55, 506). In fact, plaintiff reported to his therapist at this time that he was able to handle his symptoms and that the structure of school helped. *Id*. As the ALJ noted, despite plaintiff's claim of hearing voices, plaintiff successfully handled college work, much of it on a full-time basis. (Tr. 55-56). Plaintiff reported hearing voices at

the hearing, yet he was able to answer all the questions put to him by his attorney and the ALJ, and demonstrated no impairment of concentration or any inappropriate behavior.  Plaintiff also managed to complete his sentence of one year of community service.  According to the Commissioner, these activities and accomplishments undermine plaintiff's claims and the ALJ properly considered them.   The ALJ also properly considered other activities of daily living, such as plaintiff's ability to care for a pet, drive, shop, and perform other household chores.  (Tr. 56).  According to the Commissioner, plaintiff has not advanced any compelling reason to overturn the ALJ's credibility determination.  Thus, substantial evidence supports the ALJ's RFC finding, as well as his finding that plaintiff was not disabled and not entitled to benefits.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

      If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

      The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

   B.   <u>Governing Law</u>

   The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis

Dr. Tripp completed a PRTF on May 5, 2008. He found that plaintiff had mild limitations in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentrating, persistence or pace, and one or two episodes of decompensation. (Dkt. 5-9, Pg ID 505). Dr. Tripp also concludes that plaintiff could do simple, sustained, unskilled tasks with persistence. (Dkt. 5-9, Pg ID 507). Dr. Tripp also completed a Mental Residual Functional Capacity Assessment (MRFCA), in which he found that plaintiff had the following moderate limitations: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; and (3) the ability to get along with coworkers or peers without distracting them or exhibiting

Report and Recommendation
Cross-Motions for Summary Judgment
*Craven v. Comm'r*; Case No. 10-14245

behavioral extremes.  (Dkt. 5-8, Pg ID 490-491).  The ALJ concluded that plaintiff has the "has the residual functional capacity to perform a full range of work at all exertional leve1s but with the following nonexertional limitations: limited to simple repetitive tasks."  (Dkt. 5-3, Pg ID 71).

Plaintiff claims that the ALJ's RFC failed to account for the finding that he suffered from a "moderate" limitation in concentration, persistence, or pace.  The ALJ relied on Dr. Tripp's PRTF and MRFCA extensively in his decision and in formulating his RFC.  Plaintiff has pointed to no evidence in the record that is inconsistent with Dr. Tripp's conclusions or any reason the ALJ should have adopted some parts of Dr. Tripp's conclusions, but not others.  While plaintiff says that some of Dr. Tripp's conclusions are outside his area of expertise, he offers no factual or legal basis for this assertion.  Moreover, as has been explained previously, absent some evidence to support doing so, a "selective" adoption of the PRTF is not generally appropriate.  *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. 2008) ("Plaintiff's argument for the selective adoption of Dr. Marshall's 'moderate' limitations without considering his ultimate conclusion would amount to a distortion of the record."); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. 2010) ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place. The

psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work."); *see also Taylor v. Comm'r*, 2011 WL 2682682 (E.D. Mich. 2011). Thus, it was entirely reasonable for the ALJ to incorporate the specific limitations found by Dr. Tripp along with his conclusion that plaintiff still retained the functional capacity to perform work on a sustained basis. Again, plaintiff has pointed to no specific record evidence to the contrary. While plaintiff asserts that Dr. Tripp did not have the benefit of plaintiff's mental health treatment records from April, 2008 through June 2009, the undersigned notes that plaintiff fails to point to something in those records that undermine's Dr. Tripp's opinion or the ALJ's RFC. Plaintiff's records in this time period showed, for the most part, general progressive improvement and it was noted that he was school full-time in March, 2009. (Dkt. 5-9, Pg ID 551) ("Charles is still enrolled in college & says doing ok; he says no major symptom issues since meds chgd..."). Indeed, in the June 30, 2009 treatment note, it was indicated that plaintiff's hallucinations have stopped and suicidal thoughts have stopped. (Dkt. 5-9, Pg ID 539). The undersigned finds no basis to overturn the ALJ's decision regarding plaintiff's mental impairments and his functional capacity.

Plaintiff also says that the ALJ should have taken into account that he tended to minimize his psychiatric symptoms. Plaintiff does not really explain

how this should have affected the ALJ's decision regarding his RFC, which the undersigned finds is consistent with the evidence in the record and supported by substantial evidence.  Simply because plaintiff tended to minimize his condition does not mean that the ALJ should have fully credited his testimony when the substantial evidence in the record supports the RFC as found by the ALJ.  Plaintiff has simply not met his burden of establishing that the ALJ's credibility analysis was in error.

The ALJ also properly relied on the fact that plaintiff was attending school full-time and doing well in both the credibility analysis and in formulating the RFC.  The undersigned agrees with the Commissioner that if plaintiff had the mental capacity to learn complicated software and successfully attend school full-time, then he surely retained the ability to perform the range of simple, unskilled work to which the ALJ limited him.  This evidence, combined with the extensive evidence discussed by the ALJ regarding plaintiff's other activities, accomplishments, and the improvement of his condition in treatment, along with Dr. Tripp's opinion, fully support the RFC as determined by the ALJ. Importantly, plaintiff points to no contrary opinion in the record by a treating or consulting physician or other treatment provider.  The ALJ correctly noted that none of plaintiff's treaters imposed any functional limitations on him at any point.

Finally, plaintiff indicated that the ALJ inappropriately rejected the

limitations set forth in plaintiff's mother's function report dated March 3, 2008. As the Commissioner point out, the ALJ discussed this report and found it to be consistent with the RFC.  The undersigned also notes that it was completed in early 2008, and plaintiff's condition had improved greatly over the course of 2008 and 2009.  Plaintiff does not point to anything specific in this report that is inconsistent with the RFC as found by the ALJ, which limits plaintiff to simple, repetitive tasks.

    D.    <u>Conclusion</u>

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 1, 2012          s/Michael Hluchaniuk
                              Michael Hluchaniuk
                              United States Magistrate Judge

Report and Recommendation
Cross-Motions for Summary Judgment
*Craven v. Comm'r*; Case No. 10-14245

25

## **CERTIFICATE OF SERVICE**

     I certify that on March 1, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Marsha E. Wood, Derri T. Thomas, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov
